John W. HUGHES and Cynthia B. Hughes, his wife, Plaintiffs,

v.

John S. REPKO and Mrs. John S. Repko, his wife, Defendants.

Civ. A. No. 76–344.

United States District Court, W. D. Pennsylvania.

July 11, 1978.

**44**

Michael P. Malakoff, Pittsburgh, Pa., for plaintiffs.

John A. Bacharach, Pittsburgh, Pa., for defendants.

## OPINION

MARSH, District Judge.

In this housing discrimination suit, the plaintiffs were awarded $1,250 by a jury in their action under 42 U.S.C. § 1982 against defendant Mrs. Repko. Defendants prevailed in the conspiracy claim asserted against Mr. and Mrs. Repko under § 1985 and in the § 1982 action against Mr. Repko. The previous order of this court, to the extent it allowed a fee for plaintiffs' counsel, was vacated and remanded for further proceedings consistent with the opinion of the Court of Appeals, 578 F.2d 483 (3rd Cir. 1978). The relevant facts appear in the opinion of the Court of Appeals and in the previous opinion of this court, 429 F.Supp. 928 (1977).

The proper first step in calculating reasonable attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976 is calculation of the so-called lodestar. *See Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir. 1976) (*Lindy II*). This requires the court to determine not only the number of hours actually devoted to the plaintiffs' successful claim, but also to decide whether it was reasonably necessary to spend that number of hours in order to perform the legal services for which compensation is sought. The burden of persuasion in this instance rests on the plaintiffs who seek a fee of $3,850 plus costs in the amount of $222.33.

Plaintiffs rely on an affidavit of their counsel listing 55 hours of legal services.[1] According to this affidavit, approximately 10.2 hours of this time was in-court time, including one-half hour for the preliminary pretrial conference, one-half hour for argument on the motion for summary judgment, two hours for jury selection, 4.7 hours for trial on January 5, and 2.5 hours in court on January 6. The remainder of the time, or about 44.8 hours, is attributed to out-of-court matters. In our considered judgment, 44.8 hours of out-of-court time was more than was reasonably necessary to perform the legal services for which compensation is sought by plaintiffs.

We reach this conclusion after the following analysis [2] of the number of out-of-court hours allocated by plaintiffs for particular legal services in connection with this case.

The pleadings themselves are quite brief, and it was recognized early in the lawsuit that this was not a complicated matter and that only minimal discovery would be necessary (See Transcript and Memorandum of Pretrial Conference of April 20, 1976). Plaintiffs' counsel found it necessary to meet with his clients twice for a total of about two hours. By the time of trial, the file in this case consisted of a three-page complaint, a two-page answer, two pretrial statements of two or three pages each, a brief stipulation of facts, and four depositions of approximately 25 pages each.

---

1. Counsel for defendants averred that he spent a total of 40.75 hours on this case, and that one-half of this time was attributable to the successful defense of Mr. Repko. The affidavit of plaintiffs' counsel does not attempt to distinguish the time spent on successful issues from the time spent on unsuccessful issues.

2. In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (1974), the Fifth Circuit noted that in determining a reasonable fee award:

"The trial judge is necessarily called upon to question the time, expertise, and professional work of a lawyer which is always difficult and sometimes distasteful. But that is the task, . . . ."

At trial, each side took approximately two hours to present its evidence, including time for cross-examination. Plaintiffs presented three witnesses, two of whom were the plaintiffs themselves. The direct testimony of Mr. and Mrs. Hughes covers a total of approximately 35 pages in the trial transcript, with an additional 20 pages for cross-examination. The only other witness called by plaintiffs was defendants' neighbor, Mrs. McDonald, whose actual testimony covers about six pages in the trial transcript. Plaintiffs offered no exhibits at trial. The question for the jury was whether to believe the plaintiffs' version or Mrs. Repko's version of the brief conversation on Mrs. Repko's porch on the evening when Mrs. Repko told the plaintiffs she could not rent the apartment to them.

Against this background of uncomplicated issues of fact and law, we note that plaintiffs' counsel has attributed a total of about nine hours to his work in opposition to the defendants' motion for summary judgment. Counsel's research yielded a brief of five pages. Oral argument on the motion consumed a total of 35 minutes for both sides, including time spent correcting typographical errors in the depositions. Plaintiffs later submitted a supplemental brief consisting of a one-page letter to the court citing and discussing a single case. We believe nine hours to be considerably more time than was reasonably necessary to complete the work done in opposition to the motion for summary judgment. The time reasonably required for the legal services rendered in opposition to defendants' motion was no more than four hours, plus the one-half hour in court.

■ We also note that counsel for plaintiffs has listed a total of 8.2 hours, or approximately one-fifth of his total out-of-court time, for post-trial work on the matter of attorney's fees after he was supplied with the 1976 Awards Act by the court. Counsel had done a significant amount of

research on the issue of attorney's fees prior to the trial, as indicated by his seven-page trial brief (3.5 hours) which contains two pages on fee awards in discrimination cases. We believe that 8.2 hours was more time than was reasonably necessary to prepare the post-trial materials submitted by plaintiffs with respect to fees.[3] At most, 2.5 hours would be a reasonable time in which to set forth the number of hours expended and to prepare plaintiffs' post-trial memoranda on attorney's fees.

For January 3, counsel has listed 6.2 hours for work on a variety of matters:

> "Prepare for trial; order subpoena for Mrs. McDonald; pick jury; conference with Judge Marsh; complete Points for Charge; Memorandum of Law on Allowable Damages under Section 1982."

The record shows that jury selection and the conference with the court lasted no more than two hours. The memorandum of law on damages is approximately two-typed pages consisting of a short discussion and a list of materials which were appended to the memorandum including photostatic copies of two chapters from the 1974 "Guide to Practice Open Housing Law" and a copy of the opinion of November 19, 1975 by Judge Rosenberg in *Todd v. Lutz*, 64 F.R.D. 150, a case brought by plaintiffs' counsel involving a refusal to lease a residence because of race. Counsel had previously spent one hour on December 31 working on plaintiffs' requested points for charge. We conclude that 6.2 hours was more time than was reasonably necessary to complete the matters listed for January 3. In addition to the two hours in court, no more than one hour was reasonably necessary for these matters.

We note that counsel spent 1.5 hours on January 2 reviewing the stipulation and the statements of witnesses. He also spent two hours on January 4 preparing for cross-examination of Mr. and Mrs. Repko. The Repkos were the only defense witnesses and the only witnesses cross-examined by plain-

---

**3.** Although we conclude that the fee award may include reasonable compensation for services rendered in connection with the fee application, *Stanford Daily v. Zurcher,* 64 F.R.D.

680, 683 (N.D.Cal.1974), we note that there is authority to the contrary. See *Commonwealth of Pennsylvania v. O'Neill,* 431 F.Supp. 700, 707 (E.D.Pa.1977).

tiffs' counsel. Their pretrial depositions had lasted approximately one-half hour each, and their combined testimony at trial covers a total of only about 25 pages while cross-examination consumes only about 27 pages of the trial transcript. The court acknowledges that credibility was the vital issue before the jury. Nevertheless, in light of the number of other hours counsel spent working on and reviewing this case file, the court believes that this additional two hours was not reasonably necessary to prepare for the cross-examination. No more than 1.7 hours was reasonably necessary for the combination of activities listed for January 2 and January 4.

Counsel has allocated 1.8 hours on January 5 to preparation of his closing argument and to additional research on the issue of punitive damages. The court cannot ascertain how much of this time was spent in preparation of the summation (which lasted 14 minutes) and how much was spent on the additional research on punitive damages. While the court believes that counsel acted reasonably in attempting to supplement his previous research on punitive damages, the benefit of this additional research was never presented to the court in either written or oral form. The court concludes that no more than 1.2 hours was reasonably necessary for the out-of-court work listed for January 5.

We note that plaintiffs' counsel spent 1.1 hours drafting and amending his pretrial narrative and list of witnesses. Subsequently, he spent a total of 2.4 hours working on the pretrial stipulation. Considering that the final product of this 2.4 hours was a stipulation which is taken virtually word-for-word from the previously prepared pretrial narrative, the court concludes that no more than one hour was reasonably necessary for preparation of the pretrial stipulation.

Finally, we note that plaintiffs' counsel spent about 1.5 hours preparing requests for admission which were later withdrawn by counsel. The court finds that this time was not reasonably supportive of plaintiffs' successful claim.

Thus, we conclude that the number of hours reasonably supportive of plaintiffs' successful claim and reasonably necessary to perform the legal services at issue here totals 26.2 hours for out-of-court work and 10.2 hours for in-court work.

Having completed the above analysis and having determined the reasonable hours of service, the court must next calculate a reasonable hourly rate of compensation for these services. Counsel for plaintiff seeks a rate of $70 per hour asserting that he

> "considers Civil Rights litigation under the 1866 Civil Rights Act an area of his expertise. He has not only represented numerous plaintiffs under this Act in the Courts, but he has also served for seven and one-half (7½) years as an Assistant General Counsel to the Pennsylvania Human Relations Commission thereby enabling him to develop his expertise in this field of law."

Memorandum of Law on Counsel Fees, p. 6.

Counsel for plaintiffs has brought to the attention of the court one similar case in which he participated, *i. e., Todd v. Lutz.* In a memorandum opinion filed in *Todd v. Lutz* on November 19, 1975, Judge Rosenberg stated:

> "To fix an hourly rate, I have taken into account [counsel]'s position as senior partner, his expertise and the manner in which he tried the case. . . . The legal issues were clear. . . . There were no confusing points of law. . . . As *Lindy, supra,* directs, 'the value of an attorney's time generally is reflected in his normal billing rate.' This is the beginning point from which a reasonable fee is exacted. [Counsel]'s normal billing rate, related by the affidavit, is $60 an hour. . . . I find as *Lindy* permits, that a reasonable fee for this specific case is $40.00 per hour."

This rate of $40.00 per hour was applied to both in-court and out-of-court time. No appeal was taken.

Other than in *Todd v. Lutz,* we have not been advised of the customary hourly rate

allowed in similar rent discrimination cases in this district. Counsel for the Repkos, who was substantially equal in status, quality and expertise to plaintiffs' counsel in trying this particular case, submitted an affidavit seeking compensation at the rate of $50 per hour for himself and $35 per hour for his associate who ·did not appear in court.

In addition to experience of counsel and the customary fee for similar work in the community, other facts for consideration are listed in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 718–719 (5th Cir. 1974). The plaintiffs were not undesirable clients, and there is no reason to believe that plaintiffs' counsel was precluded to any significant extent from accepting other employment by accepting this case. There is no showing that any time limitations were imposed on counsel by the plaintiffs or by circumstances. No unusual degree of skill was required to try this case properly, and the case did not involve novel or difficult questions of fact or law.

■ The court has considered the above factors as well as the evidence before us as to counsel's experience and expertise, his prevailing hourly rate, and the customary fee for similar work in this community. Believing that in-court work properly demands a higher rate than out-of-court work, we fix $60 per hour as a reasonable rate for the in-court work (10.2 hours) in this particular case. We fix $40.00 per hour as a reasonable rate for the out-of-court work (26.2 hours) in this case. These rates yield a lodestar of $1,660.

■ Plaintiffs' petition for fees, which is captioned "Legal Time and Services Rendered," does not seek an adjustment of the lodestar, but the court nonetheless is aware that counsel undertook representation of the plaintiffs with the understanding that his only compensation would be the fees awarded by the court or the jury. The court believes that this particular fee arrangement standing by itself does not justify an increase in the lodestar. After carefully considering the appropriate "contingent nature of success" factors set forth in

*Lindy II,* 540 F.2d at 117, the court concludes that the lodestar should not be increased due to the contingency of success. At the time this suit was filed, the law was exceptionally clear as to the broad scope of § 1982's pròhibition of all racial discrimination and we conclude that plaintiffs' likelihood of success was strong. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 436, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

Having completed the above calculations, the court believes there are additional factors present in this particular case which must be considered in determining a reasonable fee award.

Prior to enactment of the Civil Rights Attorney's Fees Awards Act of 1976, courts awarding attorney's fees under other civil rights statutes recognized that the amount of the award should bear a relation to the results obtained by the plaintiff. *See Williams v. General Foods Corp.,* 492 F.2d 399, 409 (7th Cir. 1974); *Schaeffer v. San Diego Yellow Cabs, Inc.,* 462 F.2d 1002, 1008 (9th Cir. 1972). In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 718, the Fifth Circuit listed the following among its guidelines for the determination of a reasonable attorney's fee award:

"(8) *The amount involved and the results obtained.* Title VII, 42 U.S.C.A. § 2000e–5(g), permits the recovery of damages in addition to injunctive relief. Although the Court should consider the amount of damages, or back pay awarded, that consideration should not obviate court scrutiny of the decision's effect on the law. If the decision corrects across-the-board discrimination affecting a large class of an employer's employees, the attorney's fee award should reflect the relief granted."

The Report of the House Committee on the Judiciary discussing the Civil Rights Attorney's Fees Awards Act of 1976 made specific reference to the guidelines enumerated in *Johnson,* including "the amount received in damages, if any." *H.Rep. No.* 94–1558, 94th *Cong.,* 2d *Sess.* 8 (1976). The

Report of the Senate Committee on the Judiciary likewise cited *Johnson* as setting forth appropriate standards. *S.Rep. No.* 94–1011, 94th *Cong.*, 2d *Sess.* 6 (1976), U.S. Code Cong. & Admin.News 1976, p. 5908. As an example of the correct application of these standards, the Senate Report cited *Swann v. Charlotte-Mecklenburg Board of Education*, 66 F.R.D. 483, 484 (W.D.N.C. 1975), wherein the court gave significant consideration, to the "results obtained" (*i. e.*, the complete desegregation of the Charlotte-Mecklenburg school system).

In the case before us, the jury returned an award of $1,250 compensatory damages and awarded no punitive damages. We believe this modest award of damages reflects the fact that the defendant's act of discrimination affected the plaintiffs in only a limited manner and that the defendant's misconduct, while not excusable, was of a minor nature. In this instance, the small award of damages is not counter-balanced by any significant public benefits flowing from the litigation. The plaintiffs came into court to vindicate an act of discrimination which had affected no one but themselves. The jury understood that the act of rental discrimination was an isolated one by a defendant who was a public health nurse, not a commercial property owner.

In adopting the Civil Rights Attorney's Fees Awards Act of 1976, Congress was aware that the important public policy expressed in § 1982 depends heavily upon private enforcement by civil rights plaintiffs who act as private attorneys general in eliminating discriminatory practices adversely affecting all citizens. Through the Awards Act of 1976, Congress sought to assure such plaintiffs an opportunity to recover what it costs them to come into court to vindicate their rights and the important Congressional policies. *See S.Rep. No.* 94–1011, 94th *Cong.*, 2d *Sess.* 2. The verdict awarded to plaintiffs here did not correct across-the-board discrimination affecting a large class of persons nor did it eliminate a widespread or pervasive violation of civil rights.

■ In consideration of these particular circumstances, the court believes that the minimal benefit produced by this litigation does not warrant an award of the full value of the time expended. *See Merola v. Atlantic Richfield Company*, 515 F.2d 165, 168–169 (3rd Cir. 1975) (*Merola II*). Therefore, the objectively determined fee will be reduced from $1,660 to $830. While this total is less than the amount sought by plaintiffs, we nevertheless believe it to be a reasonable fee award in this particular case. Where an attorney undertakes a litigation in which the potential damages *and* the potential public benefit are small, the attorney runs the risk that the statutory fee award may not be full compensation for his labors.

An appropriate order will be entered awarding plaintiffs $830.00 as a reasonable attorney's fee plus $222.33 in costs for a total of $1,052.33.